Mike Arias (CSB #115385)
  mike@asstlawyers.com
Alfredo Torrijos (CSB #222458)
  alfredo@asstlawyers.com
**ARIAS SANGUINETTI WANG & TORRIJOS, LLP**
6701 Center Drive West, 14th Floor
Los Angeles, California 90045
Telephone:  (310) 844-9696
Facsimile: (310) 861-0168

Steven L. Woodrow*
  swoodrow@woodrowpeluso.com
Patrick H. Peluso*
  ppeluso@woodrowpeluso.com
Taylor T. Smith*
  tsmith@woodrowpeluso.com
**WOODROW & PELUSO, LLC**
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

**Pro Hac Vice* admission to be filed

Attorneys for Plaintiff Michael Imamura
and the Classes

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| **MICHAEL IMAMURA,** individually and on behalf of all others similarly situated,<br><br>                        Plaintiff,<br><br>v.<br><br>**EATON CORPORATION,** an Ohio corporation,<br><br>                        Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Michael Imamura ("Plaintiff" or "Imamura") brings this class action complaint against Defendant Eaton Corporation ("Defendant" or "Eaton") to obtain redress for, and put an end to, Defendant's serial violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA" or "Act"), specifically its failure

to provide lawful notices and disclosures to its job applicants and employees as well as its failure to provide applicants and employees with lawful notice and a fair opportunity to respond prior to taking adverse action against them. Plaintiff, for his Class Action Complaint, alleges as follows on personal knowledge as to himself and his own acts and experiences, and, as to all other matters, on information and belief, including investigation conducted by his attorneys.

## NATURE OF THE ACTION

1. Enacted to promote the accuracy, fairness, and privacy of consumer information contained in the files of consumer reporting agencies, the FCRA explicitly acts to protect both job applicants and existing employees from adverse employment action taken as a result of potentially inaccurate or immaterial information. To that end, employers who obtain and use consumer reports regarding their applicants and employees are required to provide: (1) a standalone disclosure and authorization prior to obtaining consumer reports in the first place, and (2) copies of the reports they obtain and a summary of rights under the Act prior to taking any adverse employment action against the applicants/employees based on information contained in such reports.

2. Defendant Eaton willfully violates the FCRA by: (1) failing to provide a standalone upfront disclosure and authorization that clearly and conspicuously states that Defendant may procure consumer reports about its applicants and employees, and (2) failing to provide its applicants and employees with copies of such reports and the required summaries of their FCRA rights before taking adverse action against them.

3. While investigative consumer reports are a subset of consumer reports under the FCRA, the two types of reports are not one in the same. Indeed, they are subject to distinct disclosure requirements. When an employer procures a standard "consumer report" regarding an applicant it must disclose that it is doing so in a clear and conspicuous disclosure that stands alone in accordance with Section

1681b(b)(2). On the other hand, when an employer procures an investigative consumer report (which is a more in-depth report that may feature personal interviews with sources) regarding an applicant, it must comply with the disclosure requirements of *both* Section 1681b(b)(2) as well as Sections 1681d(a)-(b). (*See, e.g.,* Advisory Opinion to Beaudette, available at https://www.ftc.gov/policy/advisory-opinions/advisory-opinion-beaudette-06-09-98.)

4. To comply with both provisions, the FTC has made clear that an employer cannot include the required Section 1681d(b) disclosures with the Section 1681b(b)(2)(A) disclosure because doing so would overshadow the latter disclosure and, thus, violates Section 1681b(b)(2)(A)'s requirement that the disclosure be clear and conspicuous and "in a document that consists solely of the disclosure." (*See, e.g.,* FTC Advisory Opinion to Willner, available at https://www.ftc.gov/policy/advisory-opinions/advisory-opinion-willner-03-25-99.)

5. Defendant fails to provide its applicants or employees with clear and conspicuous disclosures that standalone that indicate Defendant may obtain a consumer report and an investigative consumer report about them for employment purposes. Instead, Defendant provides a single disclosure combining both the disclosure for standard "consumer reports" with the disclosure required for "investigative consumer reports"—including details of the nature and scope of any investigation to be performed. As a result, the disclosure cannot be considered clear and conspicuous or to standalone.

6. Indeed, the inclusion of both disclosures renders the document confusing to Plaintiff and other class members. That is, by including both disclosures, it is unclear (and not conspicuously disclosed) as to whether Eaton intends to procure a standard consumer report, an investigative consumer report, or both. This lack of clarity frustrates the purpose of the FCRA, which is to inform consumers and allow them a meaningful opportunity to authorize such disclosures. Indeed, Imamura and others were left unclear and confused as to what exactly they

CLASS ACTION COMPLAINT - 3 -

were called upon to authorize and were deprived of an opportunity to make an informed decision on whether to authorize the report(s) or not.

7. Defendant has also willfully violated the FCRA by taking adverse action—including firing its employees—against its job applicants and employees based in whole or in part upon consumer reports or investigative consumer reports that it procured about them without providing such applicants/employees with "pre-adverse action" notice prior to taking action. Instead, Defendant takes adverse action against applicants and employees without first providing them with a copy of the consumer report procured about them or a description of their rights as required by Section 1681b(b)(3)(A). As such, Defendant serially violates the FCRA.

8. As a result of Defendant's willful violations of the FCRA, employees and applicants such as Plaintiff Imamura are deprived of rights, including privacy rights guaranteed to them by federal law, and are thus entitled to statutory damages of at least $100 and not more than $1,000 for each violation. *See* 15 U.S.C. § 1681n(a)(1)(A).

## PARTIES

9. Plaintiff Michael Imamura is a natural person and citizen of the State of California. He resides in Los Angeles, Los Angeles County, California.

10. Defendant Eaton Corporation is an Ohio corporation with its principal place of business located at 1000 Eaton Boulevard, Beachwood, Ohio 44122.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, which is a federal statute. Furthermore, jurisdiction is proper under the Class Action Fairness Act, 28 U.S.C. § 1332(d), *et seq.* ("CAFA"), because the classes each consist of over 100 people, at least one member of each class is from a State other than Ohio (the state of the Defendant), and the amounts in controversy are over $5,000,000. Further, none of the exceptions to CAFA jurisdiction apply.

CLASS ACTION COMPLAINT        - 4 -

1     12.    This Court has personal jurisdiction over Defendant because it conducts substantial business in this District and the unlawful conduct alleged in the Complaint occurred in this District.

13.    Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to the claims occurred in the District.

## FACTS COMMON TO PLAINTIFF AND ALL COUNTS

14.    Eaton is a publically traded corporation based in Dublin, Ireland with its operational headquarters located in Beachwood, Ohio.

15.    In or around August 2017, Plaintiff Imamura applied for a job with Eaton using Eaton's online application process.

16.    In or around October 2017, Eaton extended an offer of employment to Plaintiff for a position located in Los Angeles, California. This job was not one regulated by the Department of Transportation.

17.    Shortly after accepting Eaton's offer, Plaintiff was required to complete various acknowledgments of company disclosures including a disclosure regarding Plaintiff's background and criminal history.

18.    Rather than provide a standalone disclosure—as the FCRA requires—Plaintiff was presented with a document styled, "Disclosure for Background Checks," which included the disclosures for both consumer reports as well as for investigative consumer reports. (*See* Eaton Disclosure, a true and accurate copy is attached hereto as Ex. A.)

19.    The unnecessary combination of both disclosures rendered the document confusing to Plaintiff and the average consumer. Because of Eaton's failure to provide a clear and conspicuous disclosure that "stands alone" as required by the FCRA, Plaintiff was unable to meaningfully authorize and understand the nature of the report, or reports, that Eaton intended to procure about him.

20. Sterling Talent Solutions, on behalf of Eaton, procured a consumer report and what appears to be partially an investigative consumer report regarding Imamura. Both reports were subsequently combined into a single document. (*See* Imamura Consumer Report, a true and accurate copy is attached hereto as Ex. B.)

21. On December 8, 2017, prior to Plaintiff receiving a notice or a copy of the consumer report, Plaintiff received an email from Jonathan J. Mendoza, a Senior Human Resources Generalist for Eaton, informing him that based upon the results of his consumer report Eaton had determined that it was revoking its prior offer of employment to him. At this point, the decision by Eaton to not hire Imamura had been made.

22. Then, on or about December 15, 2017, Eaton—despite having already informed Imamura that his offer had been revoked—sent Plaintiff a supposed pre-adverse action letter and a copy of his consumer report stating that it was considering denying him employment with the company. This was perfunctory—Eaton had already told Imamura that it was revoking his offer back on December 8, 2017.

23. Next, on January 3, 2018, Plaintiff received a letter from Eaton informing him that it had decided to revoke further consideration for employment with the company.

24. Simply put, Eaton fails to give applicants any opportunity to review and discuss the report and any inaccuracies within it prior to taking adverse action. Instead, Eaton takes adverse action and then sets into motion a process designed to appear as though it is complying with the FCRA's pre-adverse action notice requirements when in reality its decision has already been made.

25. As the FTC has repeatedly advised, applicants and employees are to be afforded an opportunity to review the background check/consumer report and discuss it with their prospective employer *before losing out on a job* because of information contained in the report. The FTC has stated that in general, an employer should wait at least five (5) business days following the notice to the applicant or

employee of the anticipated adverse action—together with a copy of the report and a summary of the applicant/employees' FCRA rights—*before actually taking the adverse action*. This notice advises the applicant or employee of their ability to discuss the report with their employer. (*See, e.g.,* FTC Advisory Opinion to Weisberg, available at http://www.ftc.gov/policy/advisory-opinions/advisory-opinion-weisberg-06-27-97.)

26. Because of the unlawful disclosures provided to applicants and employees including Plaintiff, as well as Defendant's failure to give applicants an opportunity to remedy any issues with the consumer reports prior to terminating their offers, Defendant has willfully denied Plaintiff the rights guaranteed to him by the FCRA. As an aggrieved person, such violations entitle him, and all others similarly situated, to statutory damages of not less than $100 and not more than $1,000 per violation.

## CLASS ACTION ALLEGATIONS

27. Plaintiff brings this action in accordance with Federal Rule of Civil Procedure 23(b)(3) on behalf of himself and two nationwide Classes and under Rule 23(b)(2) with respect to the California Subclass, defined below as follows:

> **Disclosure Class:** All persons in the United States who (1) from a date two years prior to the date the Complaint is filed to the date notice is sent; (2) applied for employment with Defendant; (3) about whom Defendant procured a consumer report; and (4) who were provided the same FCRA disclosure and authorization as the disclosure that Eaton provided to Plaintiff Imamura.
>
> **Adverse Action Class:** All persons in the United States who (1) from a date two years prior to the date the Complaint is filed to the date notice is sent; (2) were subject to an adverse employment action; (3) based in whole or in part upon any consumer report procured by Defendant; and (4) who, like Plaintiff Imamura, were notified that Eaton had taken adverse action against them prior to being sent pre-adverse action notice or copies of the reports and summaries of their rights under the FCRA.

      **California Subclass:** All persons belonging to either the Disclosure Class or the Adverse Action Class who were residents of the State of California at the time they received such disclosures and notices.

28. Excluded from the Classes and Subclass are (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entities' officers and directors, (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, (3) persons who execute and file a timely request for exclusion, (4) persons who have had their claims in this matter finally adjudicated and/or otherwise released, and (5) the legal representatives, successors, and assigns of any such excluded person. Plaintiff anticipates the need to amend the Class and Subclass definitions following an appropriate period for class discovery.

29. **Numerosity:** The exact numbers of the members of the Classes and Subclass are unknown to Plaintiff at this time, but it is clear that individual joinder is impracticable. Defendant has thousands of employees and a potentially even greater number of job applicants. Further, the Class members can readily be ascertained through reference to objective criteria, including Defendant's records and the records of Sterling Talent Solutions.

30. **Commonality:** Common questions of law and fact exist as to all members of the Classes and Subclass for which this proceeding will provide common answers in a single stroke based upon common evidence, including:

    (a) Whether Defendant's conduct described herein violated the FCRA;

    (b) Whether Defendant has procured or caused to be procured consumer reports and/or investigative consumer reports about prospective employees;

    (c) Whether Defendant's combined disclosure and authorization for consumer reports and investigative consumer reports violates the

1  FCRA's requirement that the pre-report disclosure be in a "clear and
2  conspicuous document" that "stands alone";
3  (d) Whether Defendant's pre-adverse action notice process was initiated
4  after an adverse action had already been taken;
5  (e) Whether Defendant has acted willfully; and
6  (f) The proper measure of damages.

7  31.  **Typicality:** As a result of Defendant's uniform disclosures and conduct, Plaintiff and the Class and Subclass members suffered the same injury and similar damages. Like everyone else, Plaintiff was presented with a confusing disclosure and authorization that failed to stand alone, and like everyone in the adverse action class Plaintiff was subjected to an adverse action prior to receiving any pre-adverse action notice together with a summary of FCRA rights. Thus, Plaintiff's claims are typical of the claims of the other Class members.

14  32.  **Adequate Representation:** Plaintiff is a member of the Classes and Subclass and both he and his counsel will fairly and adequately represent and protect the interests of the Classes and Subclass. Neither has interests adverse to those of the Class members and Defendant has no defenses unique to Plaintiff. In addition, Plaintiff has retained counsel competent and experienced in complex litigation and class actions, including alleged class actions under the FCRA. Further, Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes and Subclass, and they have the financial resources to do so.

22  33.  **Injunctive/Declaratory Relief:** The members of the California Subclass are entitled to an order under the unlawful prong of the UCL enjoining further violations of the FCRA by Defendant Eaton. Eaton has acted or refused to act on grounds generally applicable to the Subclass members as a collective whole such that class wide injunctive and declaratory relief is necessary and appropriate.

27  34.  **Predominance:** The common questions of law and fact set forth above go to the very heart of the controversy and predominate over any supposed

individualized questions. Irrespective of any given Class member's situation, the answer to whether Defendant's pre-report disclosure fails to clearly and conspicuously disclose that a consumer report will be obtained for employment purposes in a document that consists solely of the disclosure and whether Defendant's failure to provide pre-adverse action notices are unlawful will be the same for everyone—resounding "yesses" on both questions—and they will be proven using common evidence.

35. **Superiority and Manageability:** A class action is superior to all other methods of adjudicating the controversy. Joinder of all class members is impractical, and the damages suffered by/available to the individual Class members will likely be small relative to the cost associated with prosecuting an action. Thus, the expense of litigating an individual action will likely prohibit the Class members from obtaining effective relief for Defendant's misconduct. There are no benefits to be gained by proceeding individually. In addition, there are numerous common factual and legal questions that could result in inconsistent verdicts should there be several successive trials. In contrast, a class action will present far fewer management difficulties, as it will increase efficiency and decrease expense. Further, class-wide adjudication will also ensure a uniform decision for the Class members.

**COUNT I**
**Violation of 15 U.S.C. § 1681b(b)(2)(A)(i)**
**(On Behalf of Plaintiff and the Disclosure Class)**

36. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

37. The FCRA declares that:

> Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—
>
> (i) a <u>clear and conspicuous</u> disclosure has been made in writing to the consumer at any time before the report is procured or caused to be

    procured, in a document that consists <u>solely of the disclosure</u>, that a consumer report may be obtained for employment purposes . . . .

15 U.S.C. § 1681b(b)(2)(A) (emphasis added).

38. The FCRA defines a consumer report as:

    . . . any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumers' credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or excepted to be used or collected in whole or in part for the purpose of serving as a factor establishing the consumer's eligibility for . . .

    (B) employment purposes . . . .

15 U.S.C. § 1681a(d)(1).

39. Further, the FCRA defines an investigative consumer report as:

    . . . a *consumer report or portion thereof* in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through personal interviews with neighbors, friends, or associates of the consumer reported on or with others with whom he is acquainted or who may have knowledge concerning any such items of information . . .

15 U.S.C. § 1681a(e) (emphasis added).

40. The pre-report disclosures that Defendant provided to Plaintiff and the putative Disclosure Class members willfully violated the FCRA by not being clear and conspicuous and by including extraneous information such that the disclosure cannot be said to "stand alone."

41. In addition to other extraneous information, the disclosure contains disclosures for both consumer reports and investigative consumers reports, including information and details regarding the nature and scope of any investigation to be performed, in a manner far exceeding the limited combined disclosure allowed under FTC guidance. When read together with the authorization, which is also riddled with extra disclosures, it includes additional extraneous information including state law disclosures and disclosures authorizing numerous entities and individuals to provide

information to Sterling Talent Solutions and to Defendant. Put simply, the disclosure is combined with other information such that the disclosure that a consumer report may be obtained for employment purposes is not made clearly and conspicuously. It also isn't made in a document consisting solely of the disclosure (*i.e.*, that stands alone). The result is that applicants and employees are confused as to what they are authorizing. Had a clear and conspicuous disclosure in a document consisting solely of the disclosure had been provided to Plaintiff, Plaintiff wouldn't have authorized the report.

42. Defendant procured consumer reports with respect to Plaintiff and the Disclosure Class members. The disclosures provided to Plaintiff were the same or substantially the same as the one provided to all Disclosure Class members. Thus, Defendant uniformly violated the rights of all Class members in the same way by including multiple disclosures each with extraneous information.

43. Defendant's violation of 15 U.S.C. § 1681b(b)(2)(A)(i) was willful for at least the following reasons:

(i) The rule that FRCA disclosures be "clear and conspicuous" and part of a document consisting "solely" of that disclosure has been the law established for well over a decade.

(ii) Defendant is a large corporation who regularly engages outside counsel—it had ample means and opportunity to seek legal advice regarding its FCRA responsibilities. As such, any violations were made in conscious disregard of the rights of others.

(iii) Clear judicial and administrative guidance—dating back to at least the 1990s—regarding a corporation's FCRA responsibilities exists and is readily available explaining that such disclosures must stand-alone. This readily-available guidance means Defendant either was aware of its responsibilities or should have been aware of its responsibilities but ignored them and violated the FCRA anyway.

44. Plaintiff and the Disclosure Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each of Defendant's willful violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

45. Accordingly, under the FCRA, Plaintiff and the Disclosure Class seek statutory damages and reasonable cost and attorneys' fees and such other relief as the Court deems necessary and just.

## COUNT II
### Violation of 15 U.S.C. § 1681b(b)(3)
### (On Behalf of Plaintiff and the Pre-Adverse Action Class)

46. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

47. The FCRA provides that:

> (3) Conditions on use for adverse actions.
>
> (A) In General. Except as provided in subparagraph (b), in using a consumer report for employment purposes, *before taking any adverse action* based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates—
>
> (i) a copy of the report; and
> (ii) a description in writing of the rights of the consumer under this subchapter, as prescribed by the Bureau under section 1681g(c)(3) of this title.

*See* 15 U.S.C. 1681b(b)(3) (Emphasis added).

48. The FCRA defines adverse action as "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee." 15 U.S.C. § 1681a(k)(1)(B)(ii).

49. In construing the FCRA, the FTC made clear, applicants and employees are to be provided the opportunity to review the background check/consumer report and discuss it with their prospective employer before losing out on a job because of information contained in the report. The FTC has ruled that in general an employer

should wait at least five (5) business days following the notice to the applicant or employee of the anticipated adverse action—together with a copy of the report and a summary of the applicant/employees' FCRA rights—before actually taking the adverse action. This notice advises the applicant or employee of their ability to discuss the report with their employer. (*See, e.g.,* FTC Advisory Opinion to Weisberg, available at http://www.ftc.gov/policy/advisory-opinions/advisory-opinion-weisberg-06-27-97.)

50. After obtaining a consumer report about Plaintiff for employment purposes, Defendant—based in whole or in part on information contained in Plaintiff's consumer report—revoked Plaintiff's employment offer, an adverse employment action. Defendant made this unequivocally clear in its email of December 8, 2017.

51. Defendant violated Section 1681b(b)(3)(A) of the FCRA by failing to provide Plaintiff and members of the Pre-Adverse Action Class with a proper pre-adverse action notice. Instead, Defendant evaluates each applicant's and employee's consumer report and takes adverse action against them prior to sending any pre-adverse action notice.

52. Only subsequent to the adverse action decision does Eaton bother to send the individuals a pre-adverse action notice. This post-decision process frustrates the purpose of the FCRA, and robs applicants and employees of a meaningful opportunity to discuss any aspect of their consumer reports with Defendant prior to the decision to fire them, as intended by the FCRA. In Imamura's case, he had already been notified, 7 days prior to the date he was sent a supposed "pre-adverse action notice," that his "conditional" offer of employment had been revoked. Nowhere in the email indicating this revocation of Eaton's offer did Eaton's HR generalist, Mr. Mendoza, give any hint that this decision was somehow not final. As such, by the time Imamura received the supposed "pre-adverse" action notice on December 15, 2017, he had no reason to engage in the process or to believe that the

CLASS ACTION COMPLAINT - 14 -

1  decision hadn't already been made. Had he not already been notified in no uncertain
2  terms that the offer was rescinded, Imamura would have considered explaining the
3  negative items as set forth in Eaton's "pre-adverse" action notice. But Mendoza's
4  email made it clear that any such process was merely perfunctory.

5      53.   Anyone else who received a similar email or message from Mendoza or
6  any other Eaton HR personnel (or other personnel) before Eaton provided the
7  applicant or employee a pre-adverse action notice together with a copy of the report
8  and summary of rights had his/her FCRA rights violated in the same way. Each of
9  them was lead to believe that the decision was final and in each case the decision had
10 already been made such that the supposed "pre-adverse action" letter was merely
11 perfunctory and sent in an after-the-fact attempt to make it appear as though Eaton
12 had complied with the FCRA.

13     54.   Defendant's violations of 15 U.S.C. § 1681b(b)(3)(A) were willful. The
14 rule that employers must give applicants and employees an opportunity to discuss
15 any issues affecting their consumer reports directly with the employer prior to any
16 adverse action being taken is well established. Defendant is a large corporation that
17 has retained lawyers on staff and regularly engages counsel—it has ample means and
18 opportunity to seek legal advice regarding their FCRA responsibilities. Further, there
19 is a glut of judicial and administrative guidance—dating back to the 1990's—
20 regarding a corporation's FCRA responsibilities. As a consequence of such readily
21 available guidance, Defendant was either aware of its responsibilities or should have
22 been aware of its responsibilities but violated the FCRA anyway.

23     55.   Plaintiff and the Pre-Adverse Action Class are entitled to statutory
24 damages of not less than $100 and not more than $1,000 for each of Defendant's
25 willful violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

26     56.   Accordingly, under the FCRA, Plaintiff and the Pre-Adverse Action
27 Class seek statutory damages, reasonable cost and attorneys' fees, and such other
28 relief as the Court deems necessary, reasonable, and just.

# COUNT III
## Violation of California's Unfair Competition Law, ("UCL") Cal. Bus. Prof. Code § 17200 *et seq*.
### (On Behalf of Plaintiff and the California Subclass)

57. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

58. Eaton's conduct in failing to provide clear and conspicuous disclosures and authorization before it obtains consumer reports about job applicants and employees is unlawful under the FCRA and the UCL's "unlawful" prong.

59. Eaton's conduct in providing job applicants and employees with pre-adverse action notices only after it has advised job applicants and employees that adverse action has already been taken is unlawful under the FCRA and the UCL's "unlawful" prong.

60. Eaton's conduct in providing job applicants and employees with pre-adverse action notices only after it has advised job applicants and employees that adverse action has already been taken is unfair and confusing under the UCL's "unfair" prong.

61. Plaintiff and others are entitled under the UCL to an Order enjoining Eaton's further violations of the FCRA and for corresponding declaratory relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Michael Imamura, individually and on behalf of the Classes, respectfully requests that this Court issue an order:

A. Certifying this case as a class action on behalf of the Classes and Subclass defined above, appointing Michael Imamura as class and subclass representative and appointing his counsel as class and subclass counsel;

B. Awarding damages, including statutory and treble damages where applicable, to Plaintiff and the Classes in amounts to be determined at trial;

1      C.     Awarding injunctive and other equitable relief as is necessary to protect the interests of the California Subclass, *inter alia*: (i) an order prohibiting Defendant from engaging in the wrongful and unlawful actions described herein; and (ii) requiring Defendant to provide proper disclosures, notices, and summaries under federal law;

F.     Awarding Plaintiff and the Classes and Subclass their reasonable litigation expenses and attorneys' fees;

G.     Awarding Plaintiff and the Classes and Subclass pre- and post-judgment interest, to the extent allowable;

H.     Providing such other injunctive and/or declaratory relief as necessary to protect the interests of Plaintiff and the Subclass; and

I.     Such further and other relief as the Court deems reasonable and just.

/ / /

/ / /

/ / /

# JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: May 8, 2018

**MICHAEL IMAMURA**, individually and on behalf of all others similarly situated,

By:   /s/ *Mike Arias*
Mike Arias (CSB #115385)
mike@asstlawyers.com
Alfredo Torrijos (CSB #222458)
alfredo@asstlawyers.com
**ARIAS SANGUINETTI WANG & TORRIJOS, LLP**
6701 Center Drive West, 14th Floor
Los Angeles, California 90045
Telephone: (310) 844-9696
Facsimile: (310) 861-0168

Steven L. Woodrow*
swoodrow@woodrowpeluso.com
Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Taylor T. Smith*
tsmith@woodrowpeluso.com
**WOODROW & PELUSO, LLC**
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809